Link: 340

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| LOCHNER TECHNOLOGIES, LLC<br>　　　Plaintiff,<br>　v.<br>APPLE, INC. et al.,<br>　　　Defendants. | Case No. 8:12-cv-1659-MRP<br>**AMENDED** Order Granting-in-Part and Denying-in-Part Defendants' Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,035,598 Under 35 U.S.C. § 112 |

## I.　Introduction

In this patent infringement lawsuit, the Defendants have moved the Court for summary judgment of invalidity under 35 U.S.C. § 112, ¶¶ 1-2. The grounds for invalidity are: (1) written description; (2) regards as invention; and (3) enablement. The Court grants the motion as to the written description and regards as invention requirements but denies it as to enablement.

## II.　Legal Principles

**A. Written Description**

The patent specification must reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*); 35 U.S.C. § 112, ¶ 1. Requiring a written description of the invention limits

1  patent protection to those who actually perform the difficult work of invention, *i.e.*,
2  conceive of the complete and final invention. *Id.* The inquiry is a question of fact.
3  *Id.* Where no reasonable fact finder could return a verdict for the patentee,
4  summary judgment in favor of the defendant is warranted. *Spine Solutions, Inc. v.*
5  *Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1312 (Fed. Cir. 2010). The
6  standard of proof is clear and convincing evidence. *Invitrogen Corp. v. Clontech*
7  *Labs., Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005); *see also Microsoft Corp. v.*
8  *i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011). The written description must support
9  the full scope of the claims as construed. *Energy Transportation Grp., Inc. v.*
10 *William Demant Holding A/S*, 697 F.3d 1342, 1350 (Fed. Cir. 2012).

**B.  Regards As Invention**

Patent claims must cover "subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112, ¶2. "Where it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention, we must hold that claim invalid under § 112, paragraph 2." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002); *see generally*, Herbert J. Hammond, *The 'Regards as his Invention' Requirement of Section 112, Paragraph 2 of the Patent Act: Ensuring that the Inventor Claims what he Regards as his Invention*, 5 Tex.Intell.Prop.L.J. 257 (1997) (tracing historical statutory and case law roots of the "regards as his invention" requirement"). The regards-as-invention requirement is a question of law drawn from the Court's performance of its duty as the construer of patent claims. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000).

**C.  Enablement**

The specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. *Magsil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). Whether a patent is enabled is a question of law based on underlying factual

questions that must be proven by clear and convincing evidence. To determine whether the amount of experimentation is undue, the Federal Circuit has articulated eight factors. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

### III. Analysis

The Federal Circuit has recognized three types of transitions,[1] each corresponding to a term-of-art phrase: (1) open claims, *e.g.*, "including;"[2] (2) closed claims, *e.g.*, "consisting of;" and (3) an in-between format, *e.g.*, "consisting essentially of." "The transition is a formal part of the claim that serves a vital role in ***defining claim breadth***."[3] As such, the full scope of an open claim is broader – by definition – than that of an in-between claim, which in turn is broader than that of a closed claim.[4] Open claims cover the claimed elements *and anything else*. Closed claims cover only the claimed elements to the exclusion of anything else. Finally, in-between claims cover the claimed elements *and anything else which does not materially alter the claimed invention*. The patentee's choice of transition term has significant implications for the full scope of the corresponding claim.[5]

---

[1] *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998) ("A 'consisting essentially of' claim occupies a middle ground between closed claims that are written in a 'consisting of' format and fully open claims that are drafted in a 'comprising' format.").

[2] The Federal Circuit "has consistently interpreted '***including***' and 'comprising' to have the same meaning, namely, that the listed elements . . . are essential but other elements may be added." *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008).

[3] Robert P. Merges & John Duffy, Patent Law and Policy: Cases and Materials, Fifth Edition, 2011 (Chapter 1(C)(1)(b)) (describing the differences in the full scope of open, in-between, and closed claims).

[4] Open-ended claim terms have the broadest scope. Concerns of validity, however, can guide a patentee to invoke in-between or closed claims. Commonly, patentees avoid open-ended claims in light of prior art. But, as here, validity concerns regarding Section 112 paragraphs 1 and 2 could also impact the patentee's claim drafting election.

[5] Avoiding prior art is not the sole incentive to elect something lesser than an open-ended claim. Absence of prior art does not give a patentee a broad license to always use open-ended claim language. Compliance with section 112 is also an underlying concern. The chosen transition term, which impacts the full scope of the corresponding claim, must match: (1) what the

1 To satisfy the enablement requirement, the patent specification must enable the full scope[6] of the corresponding claim. Likewise, to satisfy the written description requirement, the patent specification must support the full scope[7] of the corresponding claim. Finally, to satisfy the regards-as-invention requirement, the claims must correspond to what the patentee regarded as the invention in the specification. Consequently, written description, enablement, and regards-as-invention analyses are not agnostic with respect to the transition term – the sole impact of which is to alter the full scope of the corresponding claim.[8]

//
//
//
//
//
//
//
//
//
//

---

specification describes; (2) enables or; (3) what the patentee regards as his invention. In certain cases, the inventive idea enabled, described, or regarded as the invention – as evidenced by the specification – warrants drafting what amounts to a negative claim limitation by invoking an in-between transition term such as "consisting essentially of" as opposed to an open-ended transition term such as "including."

[6] *Magsil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012).

[7] *Energy Transportation Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1350 (Fed. Cir. 2012).

[8] At oral argument, counsel for Lochner appeared to treat section 112 analysis as agnostic to the transition term by arguing that the *only* requirement is to prove that the specification discloses the explicitly claimed elements. This approach: (1) disregards the fact that the transition term is not a superfluous term but is an actual claim element in and of itself; and (2) rests on the false assumption that the full scope of open-ended, closed, and in-between claims is coextensive.

-4-

Consider three claims. The first is a closed claim, *e.g.*, a product **consisting of** A, B, and C. The second is an in-between claim, *e.g.*, a product **consisting essentially of** A, B, and C. And the third is an open claim, *e.g.*, a product **including** A, B, and C. Next, regard D, E, and F as elements which *do not* materially alter the invention, and G, H, and I as elements which *do* materially alter the invention. The full scope of the first transition type (closed claims like "consisting of") is depicted by the inner-most circle (1) below. That is, closed claims cover products covering the claimed elements to the exclusion of any other elements. The full scope of the second category (in-between claims like "consisting essentially of") is broader and includes additional elements (D, E, and F) which do not materially alter the invention, but excludes elements (G, H, and I) which do materially alter the invention.. Finally, the full scope of the third category (open claims like "including") is still broader – and includes even elements G, H, and I, which materially alter the invention.



Claim 1 of the '598 patent recites a portable input-output system "*including*" three components: (1) a wireless transceiver; (2) an input interface; and (3) a display arrangement. As such, its full scope covers products which feature the claimed elements *in addition to* elements which materially alter the invention. Had the patentee elected to invoke in the claims, as he did in the specification, the in-between transition term "composed essentially of,"[9] the full scope of the ensuing claim would have covered products which feature the claimed elements *to the exclusion of* elements which materially altered the invention.[10]

*First,* the Court is unable to *tether*[11] the full scope of open-ended claims to bring them in compliance with the dictates of section 112. The full scope of open-ended claims is unamenable to change; terms like "including" have a well-accepted meaning in patent law. For such claims, the benefits of uniformity and clarity plainly outweigh *ad hoc ex-post* limiting of the expansive reach of such claims. *Second*, the full scope of patent claims cannot organically expand and compress from one hearing to the next. For purposes of claim construction and infringement, an open-ended claim covers the full scope, *i.e.*, the recited claimed elements *and any other element*. This "full scope" does not automatically shrink to the *list of claimed elements* for purposes of written description. As depicted above, the different transition terms impact the full scope of the corresponding claims.

---

[9] '598 at 2:5-8.

[10] "Historically, the Patent and Trademark Office [has] disfavored the use of negative limitations in claims. The major criticism . . . has been that they fail to meet the requirements of 35 U.S.C. § 112 . . . There are situations, however, when negative limitations are the only way to describe an invention." Steven J. Hultquist, *The Introduction of Negative Claim Limitations During Ex Parte Prosecution: 35 U.S.C. 112 and the Issue of Antecedent Support*, available at http://www.hultquistip.com/files/negative_claims.pdf (last accessed on June 6, 2013). "[T]he effect of . . . 'consisting essentially of' language is to import negative limitations into the claim . . . exclud[ing] from the scope of protection anything which materially alters the claimed subject matter of specifically recited elements." *Id.*

[11] *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (tethering claim scope to written description).

The patentee or the Court cannot rewrite open-ended terms like "including" or *construe* them more narrowly than their well-established open-ended meaning. Nor can an accused infringer rebut the infringement charge by citing additional elements in its products. Infringement is a trivial showing once it is undisputed that a product features the listed claim elements. Thus, it is all too obvious that open-ended claim terms are expansive and attractive to patentees. But to earn this expansive claim scope, the patentee must merit it. Section 112 compliance is one judicial measure of whether a patentee deserves the broad scope of open claims.[12] For such compliance, the patentee must enable the full scope, describe it, and regard it as his invention.[13]

**A. Written Description**

Upon a review of the four corners of the specification and the expert declarations of Dr. Brody and Prof. Reinman, the Court finds by clear and convincing evidence that no reasonable jury could return a verdict for Lochner on the written description issue.

Lochner argues that "each of the three recited claimed elements of the 'input-output system' is disclosed in the '831 application." Opp. at 11. This reasoning is flawed because it presumes the truth of the converse of a conditional relationship.[14] If an open-ended claim is adequately described, the specification must disclose the claimed elements. But the mere fact that the specification discloses the claimed

---

[12] Other judicial measures include the novelty and obviousness requirements.

[13] Experts, in this context, can be most helpful with the enablement and written description questions – both of which are factual inquiries. Between the two requirements of paragraph one, experts are more helpful for the enablement inquiry because they are testifying to whether a PHOSITA would be able to work with what the specification discloses *plus* his or her knowledge in the field as of the critical date to practice the invention. As to written description, the expert is testifying as to what he or she regards the patentee as possessing, given the specification. Here, the expert's testimony is clearly entitled to less weight as a matter of logic. Likewise, for the regards-as-invention requirement – a legal question – the analysis is akin to claim construction where the role of the expert is considerably diminished.

[14] Lochner's argument tracks the following faulty logic: If A, then B. B. Therefore A.

1  elements (the consequent) does not necessarily mean the open claim is adequately
2  described. The converse logic perhaps holds true for closed or in-between claims.
3  But it is merely necessary, not sufficient, to support the full scope of an open
4  claim. *Energy Transportation Grp., Inc. v. William Demant Holding A/S*, 697 F.3d
5  1342, 1350 (Fed. Cir. 2012) (written description must support full scope of claim).
6  The full scope of an open claim ("including"), as explained, *supra* at 5-6, is by
7  definition broader than an in-between claim ("consisting essentially of").

8      To support an open claim, the specification does not need to describe *every*
9  possible component that could be added to the listed three components to support
10 the open-ended claim. That would be absurd. But where, as here, the patentee only
11 teaches rendering the input-output devices portable by including *fewer components*
12 than a typical device, but the claims do not cabin the input-output device's design
13 in this manner by using an in-between transition term such as "consisting
14 essentially of," the claim is suspect under the written description requirement. The
15 Court must view the disclosure from the perspective of one of ordinary skill in the
16 art. Thus, the Court conducts its analysis in light of the declarations of Prof.
17 Reinman and Dr. Brody.

18     **1. Reinman Declaration**

19     Prof. Reinman points out that the claim scope of the input-output system is
20 cabined by the claim term "portable." Reinman Decl. at 7-8. That is indeed correct.
21 The claim term "portable" imposes an upper limit on what components can enter
22 the input-output system. Specifically, the input-
23 output system excludes those components that render
24 it not portable, notwithstanding the open-ended
25 transition term "including." Prof. Reinman cites a
26 multi-disk RAID drive (pictured) for backup storage
27 as an exemplar of a component that would fall
28 outside the scope of the open claim because it would

-8-

1 render the input-output system non-portable.

2 Prof. Reinman correctly notes that an ordinary artisan would be familiar with
3 Moore's law – the widely known concept in the computer industry that over time
4 the number of transistors on integrated circuits doubles approximately every two
5 years. Reinman Decl. at ¶24. Indeed, most lay people with an interest in
6 technology are familiar with this now-famous prediction made almost a half
7 century ago. Prof. Reinman concludes that an ordinary artisan "reading the
8 specification would understand that over time as computer components become
9 smaller and cheaper, ***additional components might be added to the . . . input-***
10 ***output system***." *Id.* Put another way, the contention is that the operation of
11 Moore's law over time organically expands the class of components that are
12 eligible for entry into the input-output system. Apparently, the implementers of
13 Moore's law – researchers and engineers around the world – collectively raise the
14 ceiling marking the upper bound of the claimed input-output system. This notion is
15 quite unproblematic and uncontroversial as far as infringement doctrine is
16 concerned.[15] But the Court is faced with a written description motion – not a non-
17 infringement motion.

18 As such, the Court must examine whether the four corners of the specification
19 reveal *any* evidence that Mr. Lochner shared Prof. Reinman's notion of Moore's
20 law as the driver of portability in the input-output system.[16] The Court finds none.
21 Quite the opposite. Whereas Prof. Reinman cites Moore's law, *i.e.*, *shrinking*
22 components, as a driver of portability, the patent specification *repeatedly* attributes

---

[15] *See* Christopher A. Cotropia, *After-Arising Technologies and Tailoring Patent Scope*, 61 N.Y.U.Ann.Surv.Am.L. 151 (2005).

[16] The Court is unconcerned with whether Mr. Lochner was familiar with Moore's Law (he almost certainly must have been). That is irrelevant to the written description analysis. What is relevant, however, is whether the four corners of Mr. Lochner's patent specification reveal any disclosure proving that Mr. Lochner interpreted Moore's Law as a potential driver of portability for components within the input-output device.

portability to *fewer* components in the input-output system.[17] This is a fundamentally different notion of portability. *E.g.*, "Since one unit . . . **need only include** an input device . . . an output device . . . [and] and transceiver unit . . . the unit can be relatively light in weight and **hence portable**," '598 at 2:5-8; "**Because of** the **limited number of components** forming [the input-output system], this can be conveniently constructed to have the general form of a briefcase, including a carrying handle," *id.* at 3:20-22. The invention accommodates other components necessary to operate the input-output device. Such components include the graphics card for high-resolution display (necessary for the output half of input-output), '598 at 5:24-25, power-supply components, *id.* at 2:33-40 (necessary to use the device in the first place), and microcontrollers (for executing core input-output tasks) *id.* at 3:58-59. But the presence of these components does not alter the fact that the specification only demonstrates possession of an input-output system with *fewer* components than a conventional computer; the *claimed* invention by contrast – places no bounds on *the type of components* that can enter the input-output system so long as the system remains portable.

Had the specification recited *anything* supporting this alternative notion of portability, the issued claims would probably have found support. But the specification is entirely silent. The perspective of Lochner's experts, though integral to written description analysis, could not sway a reasonable jury in this instance. Just as the written description doctrine prohibits new matter from entering into claim amendments in continuations, it prohibits new matter from entering into claim scope through expert testimony unsupported by the specification.

When the patent specification draws repeated causal links between the reduced *number* of components, it effectively cabins the described input-output system in a

---

[17] In fact, the title of Moore's seminal article describing Moore's law is revealing: "Cramming *more components* onto integrated circuits."

fundamentally *different* way than the isolated claim term "portable." Put another way, the specification proves that Mr. Lochner possessed an input-output device with *fewer* components. It does not prove that Mr. Lochner possessed an input-output device which is portable for any other reason.

That the full scope of the open-ended claim, as construed, covers embodiments which do *not* contain fewer components – yet can still be portable for a reason wholly unmentioned in the specification (Moore's Law) – is the clearest and most convincing evidence that the claims are invalid for lack of written description because the specification fails to provide support for the *full scope* of the open-ended claim.

### 2. Brody Declaration

Lochner's other expert, Dr. Arthur T. Brody, testified that one of skill in the art would understand that what is essential to the invention is *how* the portable input-output system interacts with the base storage and control unit, not whether or not the portable input-output system has other capabilities when it is not operating in the claimed configuration. Brody Decl. at ¶34. The Court finds that the specification is utterly void of any reference to the patentee's contemplation of a *configuration* for the input-output system wherein the input-output system is a full-fledged laptop.[18]

The only explicit contemplation in the specification comparing the input-output device to the laptop distinguishes it from a laptop. '598 at 2:30-34 ("The input/output unit ***differs from known devices*** in that in its preferred form of construction, it ***consists only of*** a keyboard and a display device, along with an associated transceiver unit."). Although this statement describes a *preferred*

---

[18] Again, Moore's law, not the patent specification, appears to provide this alternative contemplation elevating the input-output device to a fully-fledged laptop. Mr. Lochner failed to link Moore's law to portability in the specification. In fact, the specification proves only that Mr. Lochner had a reductionist design in mind for the input-output device which is portable because it contains *fewer components* which goes against the very title of the article describing Moore's Law ("Cramming *more* components . . . .").

embodiment – it is noteworthy that the patentee never deviates from this reductionist design for the input-output device wherein it hosts *fewer components* and is *therefore portable*. In each disclosed configuration, heavy duty processing is farmed out to the base system and the input-output functionality is reduced to its input and output functions. Dr. Brody's repeated references to the microcontroller and graphics cards are likewise unavailing; for each pertains to the input and output functionality of the input-output system respectively.

Dr. Brody also testified, "Whether or not the input-output device included additional ancillary components such that it would comprise a laptop is not contrary to what the inventors considered their invention." *Id.* No reasonable jury could agree with this testimony. The specification repeatedly attributes the portability (a claim limitation in and of itself) of the input-output device to the *absence* of components ordinarily found in a laptop:

> (1) Since one unit of the computer *need only include* an input device . . . an output device . . . [and] a transceiver unit . . . this unit can be relatively light and *hence portable*." '598 at 2:5-8.
>
> (2) "Because of the *limited number of components* forming [the input-output system], this can be conveniently constructed to have the general form of a briefcase, including a carrying handle." '598 at 3:20-22.
>
> (3) "The input/output unit *differs from known devices* in that in its preferred form of construction, it *consists only of* a keyboard and a display device, along with an associated transceiver unit."

To be sure, the invention accommodates other components necessary to operate the input-output device. Such components include the graphics card for high-resolution display (necessary for the output half of input-output), '598 at 5:24-25, power-supply components, *id.* at 2:33-40 (necessary to use the device in the first place), and microcontrollers (for executing core input-output tasks) *id.* at 3:58-59.

But these components, integral only to the input and output functionalities of the input-output system, hardly render the input-output device similar to a laptop.

Had the patentee opted for the in-between transition term "consisting essentially of," the full scope of the resulting claim would have included the recited elements and any elements which did not materially alter the invention – as depicted below by the "in-between" circle. This would have survived written description scrutiny because the graphics card and microcontroller do not materially alter the invention as their insertion does not violate the reductionist philosophy of the design architecture for the input-output system, *i.e.*, farming out anything not integral to performing the input or output functions, *e.g.* general purpose microprocessors and non-volatile memory, to the base unit. For this reductionist design principle is the specification's only explanation for gains in portability – not Moore's Law.



By contrast, the insertion of non-volatile memory and microprocessors *at the filing date* would have turned the specification's described reductionist philosophy for the input-output system on its head. In fact, Moore's law is antithetical to the need for having *fewer* components. Somewhat ironically, the **very title** of Gordon E. Moore's seminal article which introduced the now-famous Moore's law is "Cramming **more components** onto integrated circuits." Electronics, Volume 38, Number 8, April 19, 1965. This is in stark contrast to the patent's teachings in the specification that the input-output device is portable due to its "**limited number of components.**" *E.g.*, 3:20-22.

"The written description requirement serves a teaching function, as a *quid pro quo* in which the public is given meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time. While the role of the claims is to give public notice of the subject matter that is protected, the role of the specification is to teach, both what the invention is (written description) and how to make and use it (enablement)." *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922 (Fed. Cir. 2004). The specification evidences only one basis for portability gains – a reductionist design involving fewer components for the input-output system. These "fewer components" are farmed out to the base system, which lacks size constraints. This consists with the division-of-labor idea underpinning this invention – let the I/O system stick to components essential to I/O, which certainly include the keyboard, monitor, and wireless transceiver, but can also include graphics cards and microcontrollers essential for input-output.

But this disclosure is categorically *less* than the full scope of the open-ended claims, which extend to the claimed elements *and* to components that materially alter the reductionist design contemplated by the inventor, *e.g.*, microprocessors and non-volatile memory units. That is, the claims do not limit themselves to a "limited number of components," and this is where they depart from the written description. The claims, being open-ended, *can* include components which

1  materially alter the reductionist design underpinning the invention. The written
2  description lacks support for *this* portion of the full scope of the open-ended
3  claims.
4      To be more specific, nothing in the specification supports the ***marginal
5  difference*** between the described invention and the *full scope* of the claimed input-
6  output system, *i.e.*, <u>implementations of Moore's law driving portability gains</u>. If
7  anything, the specification's teachings of "***limited number of components***," "***need
8  only include*** [list of components]," etc. all stand in stark contrast to the very title of
9  the seminal article which introduced Moore's law, *i.e.*, "Cramming ***more
10 components*** onto integrated circuits." The cabining effect of the term "portable" is
11 insufficient to bring the claim into compliance with the written description
12 requirement. Although the only expert testimony in the record favors the patentee,
13 the Court finds that no reasonable jury would find this testimony persuasive. An
14 expert's insight cannot retroactively change the specification's teachings which
15 remain frozen at the effective filing date, even if reaching the undisclosed portion
16 of the full scope is an obvious variant of what *is* disclosed.
17     The written description requirement is not satisfied by what could have been
18 disclosed, but was not. *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 285 F.3d 1013,
19 1022 (Fed. Cir. 2002). While the Court does not seek an *in haec verba* recitation of
20 the claimed invention in the specification, "a description that merely renders the
21 invention obvious does not satisfy the requirement." *Ariad Pharms., Inc. v. Eli
22 Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (*en banc*). Thus, even if the
23 difference between the described invention (portability due to fewer components in
24 the input-output device) and the claimed invention (including portability due to
25 Moore's Law) would have been *obvious* to a person having skill in the art, that
26 does not satisfy the written description requirement. Consequently, the Court finds
27 the asserted claims invalid for lack of written description.
28     //

### B. Regards-As-Invention

The regards-as-invention requirement is a legal question. The Court has already construed that the word "including" is not amenable to narrowing. As such, the full scope of the claim term "input-output system" covers the claimed elements *and any other elements* that could enter the input-output system. The word "including" is in and of itself a claim term which impacts the scope of the patent claim. The Court finds that the term "portable" does not cabin the full scope of the overall claim so as to bring it into compliance with what the specification establishes the patentee regarded as the invention. Consequently, the Court finds that the asserted claims are invalid under the "regards as invention" requirement.

### C. Enablement

Enablement does not require disclosure of every step required to make the invention, so long as the PHOSITA can fill in the gaps with either: (1) background knowledge; or (2) experimentation that falls short of *undue* experimentation. Applied here, the question is whether PHOSITA could practice the *full scope* of the claimed input-output system. Again, the full scope places no limitations on the number of components that could enter the input-output system – so long as the resulting system is portable.

Moore's law and its subsequent implementations were decades old at the effective filing date. Of the *Wands* factors, the Court finds that genuine issues of fact plague the enablement inquiry as to: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the nature of the invention; (4) the state of the prior art; (5) the relative skill of those in the art; and (6) the predictability of the art.

Arguably, the patent specification teaches away from the *full scope* of the claims when it instructs that the input-output device differs from known computing devices in that it contains fewer components and hence is portable. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1379 (Fed. Cir. 2007). Nonetheless,

1 in the context of computing technology, genuine issues of fact exist as to whether
2 the amount of experimentation necessary to reach the *full scope* of the claims from
3 the inadequate written description is *undue*. Consequently, the Court denies the
4 Defendants' motion for summary judgment on enablement.
5 //
6 //
7 //
8 //
9 //
10 //
11 //
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## IV. Conclusion

For the above reasons, the Court grants summary judgment in favor of Defendants and rules that Claims 1-10 and 12[19] of U.S. Patent No. 7,035,598 are invalid for lack of adequate written description and failure to claim what the applicant regards as his invention. 35 U.S.C. § 112, ¶¶ 1-2. The Court denies the Defendants' motion for summary judgment on enablement.

IT IS SO ORDERED.

DATED: June 6, 2013     _____

Hon. Mariana R. Pfaelzer
United States District Judge

---

[19] A claim-by-claim analysis is necessary for such a ruling. But here, Claims 1 and 12 recite the problematic open-ended claim term "including." Claims 2-10 depend on Claim 1.